CHARLTON SUBURBAN SERVICES, LTD., Petitioner, v TOWN OF
GLENVILLE et al., Respondents.

Supreme Court, Schenectady County, December 31, 1988

### APPEARANCES OF COUNSEL

*Wayne P. Smith* for petitioner. *Robert A. Moore* for respondents.

### OPINION OF THE COURT

JAN H. PLUMADORE, J.

Petitioner brings this declaratory judgment and CPLR article 78 petition challenging respondents' limitation of the hours of use of their gravel pit, thereby conflicting with the hours of operation contemplated by the permit issued pursuant to ECL 23-2703. Respondents' defense of the Statute of Limitations is dismissed for the reasons set forth in petitioner's letter-reply. Petitioner's cause of action which alleges respondents' determination was arbitrary and capricious is amply belied by the record.

The Environmental Conservation Law mining permit was issued March 23, 1988, well after the Glenville Zoning Board of Appeals had issued a conditional use permit authorizing the operation on October 26, 1987. The Board denied reconsideration of its decision effective September 28, 1988 (the date petitioner received it). Squarely at issue is whether respondents' restriction on the hours of operation, albeit pre-ECL permit but affirmed by them thereafter, violates ECL 23-2703

(2)'s prohibition on localities regulating the "actual mining activities" *(Matter of Frew Run Gravel Prods. v Town of Carroll,* 71 NY2d 126, 133).

After *Frew Run (supra)* and *Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation* (113 AD2d 62) it is abundantly clear that (1) localities may not seek to regulate the *operation* of mines and (2) that ECL 23-2703 does not override an otherwise valid zoning proscription of such activity. Neither court was called upon, however, to rule on whether a locality may impose its own conditions when granting a permit for a contemplated conditional but otherwise forbidden use in a given zoning classification.

The court is of the opinion that this provision—regulation of hours of operation—of the conditional use permit is an attempt to regulate mining activity and as such is prohibited. Respondents argue that without the ability to regulate the hours of operation they are unable to fulfill the valid mandate of section 9.7 of their zoning ordinance. Section 9.7 recites that prior to granting any conditional use permit under section 9.6, "the Board of Appeals *may* impose such conditions and restrictions upon the establishment, location, construction, maintenance and operation of the conditional use as is deemed necessary to secure compliance with the standards and requirements of this ordinance." (Emphasis supplied.) Respondents issued the conditional use permit upon 11 conditions other than the one at issue and made section 9.6 findings that: it would not be detrimental to or endanger the public health, safety, morals, convenience or general welfare (subsection [A]) and, that it would not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted nor substantially diminish or impair property values within the neighborhood (subsection [B]). The Board made eight findings other than the two denominated above.

Respondents' argument is unpersuasive. Nothing prevents them from imposing nonoperational conditions or simply granting or denying the use without conditions (the "may" emphasized *supra).* While as noted localities are free to prohibit mining activities altogether, they are not free to impose conditions on their operation in the guise of a conditional use permit. It is observed that evasion of ECL 23-2703 was certainly not the respondents' intent, given that petitioner approached them before it approached the Department of Envi-

ronmental Conservation. Nevertheless, it is the effect of their ruling.

The Department of Environmental Conservation (D.E.C.) conditions the grant of its permits upon the applicant's obtaining whatever local permits may be required; such appears to be a partial abdication of their responsibility but is more likely a recognition of the import of *Frew Run* and *Northeast (supra)* and local and zoning realities. Such a position, however, is conducive to neither the orderly establishment and uniform regulation of *(Matter of Frew Run Gravel Prods. v Town of Carroll, supra; Matter of Northeast Mines v State of New York Dept. of Envtl. Conservation, supra)* mining operations and to date has thereby offered little or no guidance to localities wrestling with these sorts of decisions. (This D.E.C. condition was apparently not a factor in the instant case as previously noted. Indeed, petitioner and to some extent respondents sought and provided local input to D.E.C. before the ECL permit was issued.)

In defense of this requirement, however, a Zoning Board presented with a granted D.E.C. permit will from hereon know the operating conditions it can expect if it allows the use.

Dicta aside, however, what will probably be required is an appellate ruling on the question posed to this court, that is, whether or not a local government may impose conditions affecting the operation of a mine before they will approve it. That question is here answered in the negative.

Accordingly, respondents' September 26, 1988 determination declining to conform the hours-of-operation condition of their permit with that of the ECL permit is hereby declared a nullity; it is further declared that the ECL mining permit is determinative of the hours of operation of the subject gravel pit; the court declines to rule on any of the other conditions imposed to the extent petitioner's wherefore clause so requests inasmuch as none were squarely litigated and some may or may not be construed as affecting the operation of the mine/excavation.